**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| COMBAT ZONE CORP. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| JOHN/JANE DOES 1-6 | § | JURY TRIAL REQUESTED |
| | § | |
| *Defendants*. | § | |

## COMPLAINT

COMES NOW, Plaintiff, COMBAT ZONE CORP. (hereinafter "Combat Zone" or the "Plaintiff"), and files this Complaint against multiple unknown Defendants and, in support thereof, alleges as follows:

### I.   NATURE OF THE CASE

1. Plaintiff is the registered owner of the copyright to a motion picture titled "Horny Black Babysitters #3" (hereinafter the "Motion Picture"). A true and correct copy of the Certificate of Registration for the Motion Picture is attached hereto and made a part hereof for all purposes as Exhibit 1.

2. Defendants, whose true identities are currently unknown, acted in a collective and interdependent manner in the unlawful reproduction and distribution of Plaintiff's Motion Picture using BitTorrent file transfer protocol.

3. Each time a Defendant unlawfully distributes a copy of Plaintiff's copyrighted Motion Picture to others over the Internet, particularly via BitTorrent, each recipient can then distribute that unlawful copy of the Motion Picture to others without degradation in sound or picture quality. Thus, a Defendant's distribution of even a single unlawful copy of the Motion Picture can result in the nearly instantaneous worldwide distribution of that single copy to a

_____

limitless number of people. In this case, each Defendant's copyright infringement built upon the prior infringements, in a cascade of infringement.

4. Plaintiff seeks redress for the Defendants' rampant infringement of its exclusive rights in the Motion Picture, and for injunctive relief to stop Defendants from continuing to infringe upon Plaintiff's copyrighted works.

## II. JURISDICTION AND VENUE

5. This is a civil action for copyright infringement filed pursuant to the copyright laws of the United States, 17 U.S.C. §§ 101, et. seq.

6. This Court has original jurisdiction over this action without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties pursuant to 17 U.S.C. §§ 101, et. seq., and 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has supplemental jurisdiction over all other claims that are related to the copyright claims pursuant to 28 U.S.C. § 1367(a).

8. Defendants are subject to personal jurisdiction in this district, and this case arises out of Defendants' actions in this district.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(a). Although the true identities of each and every member of the collective formed by the Defendants is unknown to the Plaintiff at this time, on information and belief, each Defendant may be found in this judicial district and/or a substantial part of the infringing acts complained of herein occurred in this judicial district.

## III. THE PARTIES

1. Combat Zone Corp., Plaintiff, is a corporation organized and existing under the laws of the State of California with its principal place of business at 9320 Mason Ave., Chatsworth, CA 91311.

2. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants John/Jane Does 1-6 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff knows each Defendant only by the Internet Protocol ("IP") address assigned to the account used by each Defendant through each Defendant account holder's Internet Service Provider ("ISP") on the date and at the time at which the infringing activity of each Defendant was observed. A true and correct copy of the IP address used by each Defendant (the "Host IP Address"), the ISP utilized by each Defendant, and the location City and State of the computer utilized by each Defendant thus far identified, together with the date and time at which his or her infringing activity was observed (the "Hit Date (UTC)") is attached hereto and made a part hereof for all purposes as Exhibit 2.

3. Plaintiff intends to subpoena the ISPs that issued the Defendants' IP addresses in order to learn the identity of the account holders for the below IP addresses. In most cases, the account holder will be the proper Defendant in this case. However, further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendants.

4. The Defendants are a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm". The particular file a BitTorrent swarm is associated with has a unique "hash" (a file identifier generated by an algorithm developed and implemented by the National Security

Agency). The hash value in this case is identified as D5CB1C922F5E47E52D2765623D5940A3ACC633B0 (hereinafter the "Hash").

5. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants was and is the agent of the other Defendants, acting within the purpose and scope of said agency. Plaintiff is further informed and believes and based thereon alleges that each of the Defendants authorized and ratified the conduct herein alleged of each of the other Defendants.

6. Plaintiff believes that information obtained in discovery will lead to the identification of each Defendant's true name and permit Plaintiff to amend this Complaint to state the same. Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as defendants. Plaintiff will amend this Complaint to include Defendants' proper names and capacities when they have been determined. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damage resulting therefrom.

7. Plaintiff alleges on information and belief that each of the Defendants named herein performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged and is liable to Plaintiff for the damages and relief sought herein, jointly and severally.

8. Each of the fictitiously named Defendants engaged in the copyright infringement scheme together. They all shared and republished the same Motion Picture, and thus collectively participated in the same swarm sharing the Hash on the dates April 1, 2012 through May 7, 2012.

9. The torrent swarm in this case is not an actual entity, but is rather made up of at least two individuals, acting in concert with each other, to achieve the common goal of infringing

upon the Plaintiff's copyrights both by illegally duplicating Plaintiff's Motion Picture and illegally distributing Plaintiff's Motion Picture.

## IV.   COPYRIGHT AND BITTORRENT

10. BitTorrent is a peer-to-peer file sharing protocol used for distributing and sharing data on the Internet, including files containing digital versions of motion pictures. Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a "swarm," or group, of hosts to download and upload from each other simultaneously. The process works as follows:

   a. First, users download a torrent file onto their computer. This file contains a unique hash code known as the Hash – which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. This torrent file contains a "roadmap" to the IP addresses of other users who are sharing the media file identified by the unique hash value, as well as specifics about the media file. The media file could be any large file, such as a digital motion picture or music file.

   b. Second, the user opens the torrent file with a BitTorrent program, also known as a BitTorrent "client" application.  This software application runs on the user's computer, apart from an internet search engine, and is capable of reading the roadmap encoded in the torrent file. This client program, after reading the roadmap, connects "uploaders" of the file (i.e. those who are distributing the content) with "downloaders" of the file (i.e. those who are copying the content).  During this process, the client reaches out to one or more "trackers" that are identified on the roadmap. A tracker is an Internet server application that records the IP addresses associated with users who are currently sharing any number of media files identified by their unique hash values and then directs

a BitTorrent user's computer to other users who have the particular file each user is seeking to download.

11. The downloading user's BitTorrent client then extracts a list containing one or more tracker locations, which it then uses to connect to at least one tracker that will identify the other Defendants' computers where the file is available. Each IP address identifies an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired motion picture file for download. The downloading user's BitTorrent software then begins downloading the motion picture file without any further effort from the user, by communicating with the BitTorrent client programs running on the other Defendants' computers.

12. The life cycle of a file shared using BitTorrent begins with just one individual – the initial propagator, sometimes called a "seed" user or "seeder." The initial propagator intentionally elects to share a file with a torrent swarm.

13. Other members of the swarm connect to the seed to download the file, wherein the download creates an exact digital copy of Plaintiff's copyrighted work on the downloaders' computers. As additional members request the same file, each additional member joins the collective swarm, and each new member receives the same or different pieces of the file from each other member in the swarm who has already downloaded any part of the file. Eventually, once the initial propagator has distributed each piece of the file to at least one other member, so that together the pieces downloaded by members of the swarm comprises the whole motion picture when reassembled, the initial propagator may leave the swarm, and the remaining members can still obtain a full copy of the motion picture by exchanging the pieces of the motion picture that each one has.

14. Files downloaded in this method are received in up to hundreds or even thousands of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material.

15. In the BitTorrent world, those who merely download files without publishing and sharing files are derisively called "leechers." Being a leecher is not only a negative due to the pejorative terminology, but leechers are also punished by the torrent swarm.

16. BitTorrent's protocol stalls the downloads of leechers, in an effort to preserve network speed for the more prolific copyright infringers. The sharing of files as users receive them, then, is inherent in BitTorrent's use for the protocol to be of any utility to the end user.

17. This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users. As more peers join the collective swarm, the frequency of successful downloads also increases. Because of the nature of BitTorrent protocol, any seed peer that has downloaded a file prior to the time that a subsequent peer downloads the same file is automatically a source for the subsequent peer, so long as that first peer is online at the time the subsequent peer requests download of the file from the swarm. Because of the nature of the collective swarm downloads as articulated above, every infringer is – and by necessity together – simultaneously both stealing the Plaintiff's copyrighted material and redistributing it.

18. Plaintiff has recorded each Defendant named herein actually publishing the Motion Picture via BitTorrent.

19. Plaintiff's Motion Picture is easily discernible as a professional work. Plaintiff created the works using professional performers, directors, cinematographers, lighting

_____

technicians, set designers and editors. Plaintiff created each work with professional-grade cameras, lighting, and editing equipment.

20. Each of Plaintiff's works is marked with a copyright notice, a warning that unauthorized copying is illegal and will be prosecuted, and a statement as required by 18 U.S.C. § 2257 that age verification records for all individuals appearing in the works are maintained at Plaintiff's corporate offices.

21. At various times, Plaintiff discovered and documented its copyrighted work being publicly distributed by Defendants by and through the BitTorrent network.

22. Defendants, without authorization, copied and distributed audiovisual works owned by and registered to Plaintiff in violation of 17 U.S.C. § 106.

## V. DEFENDANTS ARE MEMBERS OF A SINGLE BITTORRENT SWARM

23. Defendants are peer members who have all collectively participated in the same peer-to-peer (hereinafter, "P2P") network swarm that was utilized to unlawfully infringe upon Plaintiff's exclusive rights in its copyrighted film without permission.

24. Defendants initiated their infringement by searching for and obtaining a torrent file containing information sufficient to locate and download Plaintiff's copyrighted Motion Picture. Thereafter, each Defendant opened the torrent file using a BitTorrent client software application that was specifically developed to read such files.

25. The unique file identifier generated by an algorithm developed by the National Security Agency associated with the instant action is the Hash. Each Defendant is a member of the same collective swarm associated with the Hash, and each acted collectively, and in concert, in effectuating the illegal and unauthorized sharing of Plaintiff's copyrighted work.

26. Each Defendant owns or otherwise has control of a different computer collectively connected to the Internet that contained – or possibly still contains – a torrent file identifying Plaintiff's copyrighted work. Each computer also contained or still contains Plaintiff's copyright work, which was downloaded using the information encoded in that torrent file.

27. All of the Defendants republished and duplicated Plaintiff's Motion Picture. Not only did Defendants replicate the same Motion Picture, but all of the Defendants, as members of the same swarm, republished, duplicated, and replicated the precise same copy and same Hash version of the Motion Picture, thus demonstrating that all of the Defendants shared and replicated the same Motion Picture with one another, thus linking them all together in a massive conspiracy and concerted effort to deprive the Plaintiff of its exclusive rights in the Motion Picture under the Copyright Act.

28. Defendant peers each utilized a torrent file to upload and download Plaintiff's copyrighted film without permission through use of the BitTorrent file transfer protocol.

29. Each Defendant peer, consistent with using a BitTorrent P2P network, obtained a torrent file containing sufficient information to locate and download a copy of Plaintiff's Motion Picture.

30. After each Defendant peer downloaded a torrent containing information concerning sources of Plaintiff's copyrighted Motion Picture, each Defendant used that information to connect to other Defendants for the purpose of sharing Plaintiff's copyrighted work with other members of the BitTorrent collective network.

31. Plaintiff's copyrighted Motion Picture was then uploaded and downloaded through a single swarm collective among the various Defendants in concert – all members sharing the same exact video, using the same exact Hash identifier.

32. Once connected to the BitTorrent swarm sharing Plaintiff's copyrighted Motion Picture, the Defendant peers shared the Motion Picture among each other by trading small portions of the file containing a digital copy of the Motion Picture. More precisely, the BitTorrent network divided the original copyrighted work into many small pieces and distributed these pieces throughout the swarm until each of the collectively participating Defendants in the swarm had a partial or complete infringing copy of the Motion Picture.

33. Based on this information, Defendants all participated in the same collective swarm, infringing upon Plaintiff's exclusive rights in its work by uploading (distributing) and downloading (reproducing) Plaintiff's copyrighted film, and through their actions each Defendant assisted each and every other Defendant, each members of the P2P network swarm, to illegally download Plaintiff's copyrighted work.

## VI.   COUNT I

### (Copyright Infringement 17 U.S.C. § 501, et. seq.)

34. The Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

35. Plaintiff is, and at all relevant times has been, the copyright owner of the Motion Picture, the copyrighted work infringed upon by all Defendants.

36. Among the exclusive rights granted to each Plaintiff under the Copyright Act are the exclusive rights to reproduce the Motion Picture and to distribute it – rights which Defendants maliciously and intentionally infringed upon.

37.     Defendants, without the permission or consent of Plaintiff, have used, and/or continue to use, the BitTorrent file transfer protocol to distribute the Motion Picture to the public, and/or make the Motion Picture available for distribution to others, including other BitTorrent users. In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act.

38.     Plaintiff is informed and believes and on that basis alleges that the foregoing acts of infringement were willful and intentional.

39.     As a result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504, and to its attorney fees pursuant to 17 U.S.C. § 505.

40.     The conduct of Defendants has caused and will continue to cause Plaintiff great and irreparable injury. Such harm will continue unless the Defendants are enjoined from such conduct by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyrights, and ordering Defendants to destroy all copies of the Motion Picture made in violation of Plaintiff's exclusive rights under the Copyright Act.

## VII.   COUNT II

### (Contributory Copyright Infringement 17 U.S.C. § 501, et. seq.)

41.     Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

42.     Defendants have participated in the deconstruction and reconstruction of the Motion Picture using BitTorrent technology.  By the very nature of the BitTorrent protocol,

Defendants have assisted others in the violation of Plaintiff's copyrights as specifically identified by the unique Hash assigned to the BitTorrent swarm identified herein.

43. Each of the Defendants published the precise same Hash file, described above, to the BitTorrent network.

44. Each Defendant downloaded, uploaded and distributed the Motion Picture to each other, in concert with one another and through use of the exact same protocol.

45. Because it is the exact same Motion Picture, using the exact same Hash, in the same general timeframe, the transaction of events at issue in this Complaint is common to all Defendants, thus rendering the Defendants properly joined in this action.

46. Defendants knew of the infringement, were conscious of their own infringement, and the Defendants were conscious of the fact that multiple other persons derivatively downloaded the file containing the Plaintiff's Motion Picture.

47. The infringement by other BitTorrent users could not have occurred but for the Defendant's participation in uploading and downloading of the Plaintiff's protected work. As such, the Defendants participation in the infringing activities of others is substantial.

48. Defendants each profited from this contributory infringement by way of being granted access to a greater library of other infringing works, some of which belonged to the Plaintiff and some of which belonged to other copyright owners.

49. As a result of Defendants' contributory infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504, and to its attorney fees pursuant to 17 U.S.C. § 505.

50. The conduct of Defendants is causing and will continue to cause Plaintiff great and irreparable injury. Such harm will continue unless the Defendants are enjoined from such

conduct by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyrights, and ordering Defendants to destroy all copies of the Motion Picture made in violation of Plaintiff's exclusive rights under the Copyright Act.

## VIII.  DEMAND FOR A JURY TRIAL

51.  Plaintiff hereby demands a trial by jury on all issues so triable.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(A) Permanently enjoin each Defendant and all other persons who are in active concert or participation with each Defendant from continuing to infringe Plaintiff's copyrighted works, pursuant to 17 U.S.C. § 502(a);

(B) Order that each Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted works from each of the computers under each such Defendant's possession, custody or control;

(C) Order that each Defendant delete and permanently remove any and all copies of Plaintiff's copyrighted works each Defendant has on the computers under Defendant's possession, custody or control, pursuant to 17 U.S.C. § 503(b);

(D)  Find that each Defendant is jointly and severally liable for the direct infringement of each other Defendant;

(E) Award Plaintiff the greater of: (i) statutory damages in the amount of $150,000 per Defendant, per registered work infringed, pursuant to 17 U.S.C. § 504(a) and (c)(2), or (ii) statutory damages in the amount of $30,000 from Defendants, jointly and severally, pursuant to

17 U.S.C. § 504(a) and (c)(1), or (iii) Plaintiff's actual damages and any additional profits of each Defendant pursuant to 17 U.S.C. 504(a) and (b);

(F) Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(G) Grant Plaintiff any other and further relief this Court deems just and proper, both at law and in equity.

Dated:  September 13, 2012　　　　　　　Respectfully submitted,

**CHALKER FLORES, LLP**

By: */s/ Thomas G. Jacks*
　　Thomas G. Jacks
　　Colorado Bar No. 39904
　　Scott A. Meyer
　　Texas Bar No. 24013162
　　14951 N. Dallas Parkway, Suite 400
　　Dallas, Texas 75254
　　(214) 866-0001
　　(214) 866-0010 (Fax)
　　tjacks@chalkerflores.com
　　smeyer@chalkerflores.com

**ATTORNEYS FOR PLAINTIFF**

## Exhibit 1

## Certificate of Registration

## **Exhibit 2**

## **Defendants Infringement Information**